IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L.S.,[1]

      Plaintiff,

v.                                              Case No. 19-1075-JWB

ANDREW M. SAUL,
*Commissioner of Social Security,*

      Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter has been fully briefed by the parties and is ripe for decision. (Docs. 9, 12, 13.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the

claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. Background and Procedural History**

Plaintiff applied for disability insurance benefits, alleging a disability beginning February 20, 2013, when she was 36 years of age. (Tr. at 12, 183.) Prior to that time, Plaintiff held jobs as a supervisor and unit clerk. (Tr. at 188.) Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at a hearing in Wichita on October 16, 2017, before ALJ Susan Toth. On February 28, 2018, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 12-23.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: fibromyalgia, idiopathic peripheral neuropathy, degenerative joint disease of the bilateral knees, obesity, degenerative disc disease of the lumbar spine, mitral valve prolapse, and adjustment disorder with anxiety and depressed mood. (*Id.* at 14-15.) The ALJ also found Plaintiff had undergone treatment for hypertension, vitamin D and B12 deficiencies, and chest wall pain, but found these impairments were not severe. (*Id.* at 15.) At step three, the ALJ

found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 15-17.)

The ALJ next determined that Plaintiff has the RFC to perform light work, as defined in the regulations, in that she can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for a total of 6 hours in an 8-hour workday; can frequently climb ramps and stairs; can understand, remember, and apply simple and intermediate instructions, but not complex instructions and maintain concentration, persistence, and pace for simple and intermediate tasks but not complex tasks.[2] (*Id.* at 17.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence. (Tr. at 18.) The ALJ noted Plaintiff had both physical and mental health problems but found the evidence did not support debilitating limitations. The ALJ reviewed medical and other evidence pertaining to Plaintiff's symptoms.

With respect to Plaintiff's fibromyalgia diagnosis, the ALJ stated that it was confirmed through tender point testing and that she also has mild degenerative changes to her lumbar spine and knees. The evidence shows that Plaintiff has had normal range of motion in her knees and ambulates with normal gait. Plaintiff does have muscle spasms, but they have improved with the use of medication. Plaintiff also receives trigger point injections. (Tr. at 19.) The ALJ stated that there is evidence that Plaintiff has remained physically active and that her treating physician has encouraged her to remain active and exercise regularly as the best treatment for her fibromyalgia. (*Id.*)

---

[2] This does not include all limitations identified by the ALJ. (Tr. at 17.)

4

The ALJ gave great weight to the opinions of the state agency medical consultants, Dr. Sarah Landers and Dr. John Listerman. The ALJ stated as follows with respect to these opinions: "Their opinions are well-explained, well-supported by the evidence discussed above, and consistent with the record as a whole." (Tr. at 20.) The ALJ does not identify the opinions of the non-examining physicians but a review of their opinions show that they are consistent with the ALJ's RFC. (Tr. at 70-73, 85-88.)

Plaintiff's treating physician, Dr. Mary Boyce, provided two opinions in which she opined that Plaintiff was unable to work. The ALJ gave little weight to those opinions, stating the following:

> Dr. Boyce opines that the claimant is unable to perform even sedentary exertional work on a full-time basis. Her opinion, however, is not well-supported by the evidence, and many of her restrictions are not explained. Dr. Boyce's opinion that the claimant is rarely able to lift 10 pounds, for instance, is not explained, nor are her postural and manipulative restrictions, which seem out of line with the mild degenerative changes that diagnostic imaging has shown in her back and knees. The minimal ability to stand, as well as Dr. Boyce's opinion that the claimant would need unscheduled breaks, and be frequently off-task and absent from work are also not explained, and are not consistent with the evidence.

(Tr. at 20.)

Dr. Boyce's second and latest opinion, dated September 11, 2017, sets forth significant limitations. On the first page, Dr. Boyce stated that Plaintiff has been diagnosed with fibromyalgia, low back pain, hypertension, mitral valve prolapse, B12 deficiency, and osteoarthritis. Dr. Boyce states that Plaintiff's symptoms include musculoskeletal pain, fatigue, knee pain, hand pain, nerve pain and tingling in the lower extremities. (Tr. at 477.) With respect to the nature, location, frequency, and severity of the pain, Dr. Boyce opined that it was daily and that it fluctuated in its severity. Dr. Boyce stated that her clinical findings and objective signs included that there were multiple trigger points that were palpable on exam and spasms in her low back. (*Id.*) Dr. Boyce

5

then completed a form in which she opined that Plaintiff can only sit for 30 minutes at one time before needing to change position and that she can only sit for 4 hours in a work day. She further opined that Plaintiff can only stand less than 2 hours in a work day. She also opined that Plaintiff must take unscheduled breaks every 2 hours, was incapable of low stress work, and would be off task 25% of the time. She further opined that Plaintiff was incapable of low stress work. (Tr. at 478-79.)

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a unit clerk. (Tr. at 21.) In the alternative, at step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were three light unskilled jobs in the national economy in significant numbers that she could perform. (Tr. at 22.)

**III. Analysis**

Plaintiff contends that the ALJ failed to properly evaluate her fibromyalgia when formulating her RFC and weighing the medical opinions.

<u>Discussion of Fibromyalgia.</u>

Plaintiff asserts that the ALJ did not evaluate her fibromyalgia properly when formulating the RFC because the ALJ improperly relied on a lack of objective findings. There is no dispute that the ALJ identified Plaintiff's fibromyalgia as a severe impairment. The issue is how she evaluated the severity of that impairment. Although fibromyalgia is difficult to diagnose as there is no objective medical test to diagnose the impairment, the Tenth Circuit has "suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015); *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n. 5 (1st Cir. 2003) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to

6

objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.")

Here, as identified by the Commissioner, the ALJ discussed Plaintiff's medical records and subjective complaints of pain in addressing her fibromyalgia. Contrary to Plaintiff's assertion, the ALJ's decision shows that she considered the objective medical evidence, Plaintiff's statements and statements from other individuals, and other factors under the regulation, 20 C.F.R. 404.1529(c). (Tr. at 18.) The ALJ stated that Plaintiff testified regarding her fibromyalgia, stating that she has pain throughout her body, muscle cramping, and fatigue. (*Id.*) Additionally, Plaintiff reported problems with her memory. The ALJ gave some credit to her testimony but stated that the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence. The ALJ then discussed the evidence and cited to the medical record. The ALJ noted that Plaintiff's fibromyalgia was confirmed by tender point testing. The ALJ also stated that she has mild degenerative changes to her lumbar spine. Additionally, although she complains of swelling, there is no evidence of evidence of synovitis or effusion. The ALJ also stated that the medical records show that Plaintiff has a normal range of motion in her knees, ambulates with normal gait and station, and walks without the use of an assistive device. (Tr. at 19, citing Exhs. 9F and 10F.) A review of the record shows additional findings of normal gait and range of motion. (Tr. at 306, 343-44, 353, 413.) Stacey Wagner, Plaintiff's treating provider at the Arthritis and Rheumatology Clinic of Kansas ("ARCK") for her fibromyalgia, also recommended activity and exercise. (*Id.*, citing Exh. 14F at 32.)[3] A review of the record shows that this recommendation was given to Plaintiff on several visits. (Tr. 414 ("Again, I discussed the importance of daily

---

[3] The record reflects that Stacy Wagner, PA-C, is Plaintiff's provider who is treating her fibromyalgia. (See Doc. 9 at 5, Tr. at 410, 434 (Dr. Boyce treatment note stating that she would discuss trigger injections with Stacy at ARCK.)

7

activity and mild exercise,") 448, 454, 464 ("I explained the activity is more important than any one medication.") This is a reasonable basis to discount the severity of Plaintiff's fibromyalgia.

Additionally, the ALJ discussed that Plaintiff's treatment showed improvement of her symptoms. (Tr. at 19.) This is a consideration under the regulation. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ cited to the record in finding that Plaintiff's muscle spasms are improved with the use of Tizanadine. Also, Plaintiff has seen benefits from receiving trigger point injections. The fact that Plaintiff benefits from treatment supports the ALJ's decision to discount Plaintiff's symptoms.

With respect to Plaintiff's memory issues, referred to as fibromyalgia fog, the ALJ discussed the consultative psychological examination performed by Dr. Simmonds. Dr. Simmonds' reports stated that he did not observe any particular memory or concentration problems. The ALJ determined that this finding is consistent with the medical records showing that Plaintiff had normal memory abilities and good judgment. (Tr. at 20.)

The ALJ also considered Plaintiff's daily activities in discounting the severity of her symptoms. 20 C.F.R. § 404.1529(c)(3)(i) (the ALJ is to consider activities of daily living when assessing Plaintiff's symptoms). The ALJ found that Plaintiff reported being physically active and was currently doing water aerobics. More importantly, Ms. Wagner has encouraged Plaintiff to remain active and exercise regularly. (Tr. at 19, citing Exh. 14F at 32.) Ms. Wagner's treatment record identified by the ALJ specifically states as follows: "Again, I explained the importance of staying active and functional is [sic] the best treatment for fibromyalgia pain." (Tr. at 474.) The ALJ also found that Plaintiff spends time with family, goes to church, attends school events, attends to her own needs, cares for her children and pets, and manages her day-to-day activities.

(Tr. at 16-17.) The findings support the ALJ's decision to discount the severity of Plaintiff's symptoms.

Plaintiff cites to *Moore v. Barnhart*, 114 F. App'x 983, 993 (10th Cir. 2004), in support of the statement that the ALJ attached "little to no significance to these findings [the tender point testing] and treatment." (Doc. 9 at 11.) In that case, however, the Tenth Circuit stated that the "ALJ recognized plaintiff's diagnosis of fibromyalgia, but seemed to require that it be established by a formalistic clinical or laboratory test." *Id.* at 990. This statement was based on the ALJ's statements regarding clinical signs, laboratory findings, and laboratory tests. Contrary to Plaintiff's assertion, the ALJ's decision in this case does not indicate that Plaintiff's symptoms were not disabling solely due to a lack of objective tests. Rather, the ALJ discussed Plaintiff's daily activities, the medical records regarding her mobility, and her response to treatment. Therefore, this is not a case in which the ALJ does "not fully understand the nature of plaintiff's diagnosed condition." *Id.* at 992.

Therefore, the court finds that the ALJ's evaluation of Plaintiff's fibromyalgia, including her allegations regarding the severity of Plaintiff's fibromyalgia, was consistent with the regulations and supported by substantial evidence.

<u>Weighing the Medical Opinions.</u>

Plaintiff goes on to argue that the ALJ failed to properly weigh the medical opinions, including the opinion of Dr. Boyce, her treating physician. An ALJ should "[g]enerally, ... give more weight to opinions from [claimant's] treating sources." 20 C.F.R. § 404.1527(d)(2). "[T]he opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Daniell v. Astrue*, 384 F. App'x 798, 804 (10th Cir. 2010) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). "When a treating physician's opinion is inconsistent with

other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). If the ALJ relies on a nontreating physician's opinion, he must explain the weight given to the opinion and give good reasons for that weight. *Id.*

In evaluating a treating physician's opinion, the ALJ is to conduct a two step process. At the first step, the ALJ must determine if the opinion is entitled to "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). In this case, the ALJ stated that Dr. Boyce's opinion was not well-supported by the record. Plaintiff disagrees with this finding. Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must still weigh that opinion using the factors in 20 C.F.R. § 404.1527. *Watkins*, 350 F.3d at 1300. The following factors must be considered:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Although the ALJ is not required to explicitly discuss all of the factors, it must be clear to the court reviewing the decision that the ALJ did consider the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Pope v. Berryhill*, No. 17-2041-CM, 2017 WL 6055712, at *2 (D. Kan. Dec. 7, 2017). In addition to weighing the opinion using the factors, the ALJ must "give

good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinion." *Andersen v. Astrue*, 319 F. App'x. 712, 717 (10th Cir. 2009).

Here, the ALJ clearly decided that Dr. Boyce's opinion was not entitled to controlling weight. The ALJ stated that Dr. Boyce opined that Plaintiff is unable to "perform even sedentary exertional work on a full-time basis." (Tr. at 20.) The ALJ stated that her opinion was not well-supported by the evidence and "many of her restrictions are not explained." (Tr. at 20.) The ALJ's decision that Dr. Boyce's opinion was not well-supported by the evidence supports her finding that the opinion was not entitled to controlling weight. *See Watkins*, 350 F.3d at 1300. As discussed above, even if the opinion is not well-supported by the evidence, the ALJ must evaluate the opinion in light of the factors and determine the amount of weight it deserves. The ALJ must give good reasons for assigning the weight.

Plaintiff argues that the ALJ did not evaluate the opinion in light of the factors as required. The court disagrees. The ALJ is not required to explicitly discuss all of the factors of the regulation as long as this court is able to determine that the factors were considered. *Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008). Plaintiff argues that the ALJ's weighing of the factors in this case is similar to the ALJ's treatment in *Pope*, *supra*. In that case, however, the court did not indicate that the ALJ stated that the opinions were considered in accordance with the applicable regulation, as in this case. Moreover, the court determined that it was only apparent that one factor was considered and that the "ALJ must give some indication that he considered the applicable factors in addition to consistency." *Pope*, 2017 WL 6055712.

The ALJ's decision here states that she considered the opinion evidence in accordance with the regulation. In addition, the ALJ identified Dr. Boyce as Plaintiff's treating physician. The ALJ also determined that the opinion was not supported by the evidence and was inconsistent with

11

the evidence. The court finds that the ALJ's lack of specific citation to all of the factors does not prevent meaningful review. *Oldham*, 509 F.3d at 1258 ("the Commissioner has recognized, not every factor for weighing opinion evidence will apply in every case.") (citations omitted.)

Moreover, the ALJ must give good reason for assigning little weight to Dr. Boyce's opinion. The ALJ stated that she was assigning little weight to the opinion because it was not well-supported and many restrictions were not explained. The ALJ also stated that the limitations were inconsistent with the evidence. Plaintiff asserts that this determination was erroneous because the ALJ only identified one specific record, the diagnostic imaging in the knees, within the discussion regarding Dr. Boyce's opinion. However, as noted by the Commissioner, the ALJ extensively discussed the medical records and the evidence prior to the discussion of Dr. Boyce's opinion. In *Best-Willie v. Colvin*, 514 F. A'ppx. 728,733 (10th Cir. 2013), the circuit stated that a lack of "contemporaneous discussion" of the evidence by the ALJ in discounting an opinion does not mean that the court cannot review the decision when the ALJ has "thoroughly discussed the medical evidence in the record." Plaintiff contends that *Best-Willie* is inapplicable because the discussion on fibromyalgia was limited to one paragraph. (Doc. 13 at 3.) As noted previously, the ALJ extensively discussed the medical records and Plaintiff's complaints. It was not limited to one paragraph. The court must be able to meaningfully review the decision of the ALJ. The court can do so when the ALJ has discussed the medical evidence and testimony. Although a contemporaneous discussion can be helpful to this court during its review, it does not mean that this court is unable to review the ALJ's decision. *Best-Willie*, 514 F. A'ppx. at 733.

In this case, the ALJ stated that Dr. Boyce's opinion was not supported by the record and, in part, was inconsistent with the medical evidence. A finding that an opinion is unsupported by the evidence constitutes good cause for assigning the opinion little weight. *Frey v. Bowen*, 816

F.2d 508, 513 (10th Cir. 1987). The ALJ's review of the evidence supports this conclusion. The court has discussed that review in this opinion. In brief, the ALJ determined that Plaintiff's symptoms improved with treatment; the examinations showed that Plaintiff has normal range of motion in her knees, ambulates with normal gait and station, and does not need an assistive device; Plaintiff has been physically active, cares for her children and pets, and manages her day-today activities; and another treating provider has encouraged Plaintiff to remain active and exercise regularly. (Tr. at 17-19); *see Tarpley*, 601 F. App'x. at 643 (upholding the ALJ's rejection of treating physicians' opinions based on similar findings, including activity levels, recommendation to stay active, and medication provided relief from symptoms). While Plaintiff has identified evidence in the record which may lend some support to Dr. Boyce's opinion (Doc. 9 at 17-18), this court is not to reweigh the evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).[4] Moreover, in citing support for Plaintiff's limitations, Plaintiff cites to the treatment records showing that Plaintiff had tender points on examination. (Doc. 9 at 18.) The record citations are to Plaintiff's medical records from ARCK.[5] Reviewing the medical records from Dr. Boyce, very little is said about Plaintiff's fibromyalgia. While Dr. Boyce completed her second opinion statement in September 2017, it appeared that her prior visit on June 2, 2017, was a laboratory visit for hypertension. (Tr. at 430.) On May 12, 2017, Plaintiff was also seen for a blood pressure check. (Tr. at 432.) On April 21, 2017, Plaintiff was seen by Dr. Boyce for a

---

[4] Plaintiff argues that the ALJ's finding that her limitations were not explained is not accurate as Dr. Boyce included a one-page description of Plaintiff's symptoms and treatment. The written report does identify Plaintiff's diagnosis, treatment, symptoms, and medication. As stated previously, Dr. Boyce noted that Plaintiff has pain and that the pain is daily but fluctuates in its frequency. The ALJ's decision does not state that all of the limitations identified by Dr. Boyce were not explained but stated that "many" limitations were not explained. (Tr. at 20.) The ALJ then identified the significant posture limitations, which would include only being able to sit for 30 minutes at a time, and the significant limitation that Plaintiff would miss workdays and be off task 25% of the time. Reviewing the ALJ's opinion, the court does not conclude that the ALJ failed to review the entirety of Dr. Boyce's opinion. Rather, the ALJ found that Dr. Boyce's stated opinion did not support such extreme limitations and that those limitations were not supported by the record.
[5] The court is not suggesting that Dr. Boyce did not have these records at the time of her opinion.

medication check. The note states that Plaintiff "feels achy from her fibromyalgia. Really trusts Stacy Wagner ARNP at ARCK. Thinks she is scheduled back there in the next month or so." (Tr. at 433.) These records do not reflect an inability to perform sedentary work. Although there is evidence in the record to support Plaintiff's claims, there is also evidence that Dr. Boyce's opinion was not supported by the record. This court is to review the sufficiency of the evidence and cannot "displace the agency's choice between two fairly conflicting views." *Oldham*, 509 F.3d at 1258. Therefore, the court finds that it was not error to assign little weight to Dr. Boyce's opinion in light of the court's review of the record.

Plaintiff further asserts that the ALJ erred by assigning greater weight to the non-examining state agency physicians. In evaluating a non-examining physician's report, the ALJ must explain the weight given to it and give good reasons for that weight. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Plaintiff asserts that the ALJ's discussion of the opinions of Drs. Landers and Listerman were conclusory and insufficient to discount Dr. Boyce's opinion. (Doc. 9 at 15.) Plaintiff cites to *Pope v. Berryhill*, *supra*, for the proposition that the court found the "ALJ's conclusion that the non-examining consultant's reports were consistent with the claimant's treatment, mental status examinations, and activities of daily living were not sufficient to explain why the reports of the non-examining consultants outweighed the treating physician's report." (Doc. 13 at 5.) Reviewing that opinion, Judge Murguia noted that the ALJ's explanation regarding the non-examining consultant opinions was insufficient but then stated that the ALJ was required to indicate that the regulatory factors were considered in evaluating the opinions, which was not done in that case. *Pope*, 2017 WL 6055712, at *2. In this case, although the ALJ did not explicitly discuss the opinions of Drs. Landers and Listerman, the ALJ stated that they were well-supported by the evidence the ALJ had discussed in her decision and were consistent with the record as a

whole.  Again, the ALJ did state that she considered all opinions in accordance with the regulation. Therefore, *Pope* is distinguishable from this case.

Although the ALJ did not engage in an express analysis of the opinions of Drs. Landers and Listerman, the need for such an analysis is "weakened when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).  The opinions of Drs. Landers and Listerman are largely consistent with the RFC.  Moreover, the ALJ indicated that their opinions were consistent with the evidence he discussed in the decision.  Plaintiff does not argue that this is inaccurate.  Plaintiff's position is that the ALJ did not explain why their reports outweighed Dr. Boyce's opinion.  The ALJ's opinion, however, set forth the ALJ's findings with respect to the record.  The ALJ then explicitly identified the weight given to the opinions and gave good reasons for doing so.  Therefore, the court is able to sufficiently review the ALJ's decision and concludes that the weights assigned to the opinions by the ALJ were due to whether they were supported by the evidence.  Again, although a different fact finder may have come to a different conclusion, this court may not reweigh the evidence.

The court finds that the ALJ did not commit error in her weighing of the medical opinions in this matter.  This court must affirm an ALJ's decision if substantial evidence supports that decision.  *See Tarpley*, 601 F. App'x. at 643.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*  That much exists in this case.

**IV. Conclusion**

The Commissioner's decision is AFFIRMED.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 24th day of October, 2019.

                                          _____s/ John W. Broomes _____
                                          JOHN W. BROOMES
                                          UNITED STATES DISTRICT JUDGE